```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
_____

JEREMY MONTAGNA,                )
                                )
     Plaintiff,                 )
                                )
v.                              )      No. 20-1227-TMP
                                )
KILOLO KIJAKAZI,                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
     Defendant.                 )
_____

            ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____
```

On October 13, 2020, Jeremy Montagna filed a Complaint seeking judicial review of a Social Security disability benefits decision. (ECF No. 1.) Montagna seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. For the reasons below, the decision of the Commissioner is AFFIRMED.

## I.   BACKGROUND

Montagna initially filed for Social Security Disability Insurance benefits on June 29, 2018. (R. 225-26.) Montagna had a previous application for benefits denied by a different Administrative Law Judge ("ALJ") on July 19, 2017. (R. 10.) The ALJ in the present case found that "none of the conditions for

reopening set forth in 20 C.F.R. § 404.988 [are] present" and declined to reopen that decision. (Id.) Thus, the relevant period for Montagna's potential disability was determined to be from July 20, 2017 to present. (R. 11.)

Montagna's first hearing was held on November 14, 2019. (R. 37.) After this hearing, the presiding ALJ used the five-step analysis to conclude that Montagna was not disabled from July 20, 2017, through the date of the ALJ's decision. (R. 10-21.) At the first step, the ALJ determined that Montagna had not engaged in any substantial gainful activity since July 20, 2017. (R. 13.) At the second step, the ALJ found that Madden had the following severe impairments: "degenerative disc disease, remote history of right hip and pelvis fractures, osteoarthritis, diabetes mellitus, and obesity." (Id.) While Montagna had also alleged mental impairments of anxiety and depression, the ALJ determined that these did not cause more than "minimal limitation in [Montagna's] ability to perform basic mental work activities" and found them nonsevere. (Id.) This determination followed a review of the four broad areas of mental functioning, during which the ALJ noted that Montagna's record generally "does not appear to document any mental health treatment, let alone any psychiatric hospitalizations or other evidence of psychological decompensation, since July 20, 2017[.]" (R. 14.) At the third step, the ALJ concluded that Montagna's existing impairments did not meet or medically equal, either alone

or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.)

Before proceeding to step four, the ALJ determined Montagna's residual functional capacity ("RFC"), or his "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (R. 12.) In explaining how he arrived at this RFC, the ALJ noted that he had considered Montagna's obesity. On appeal, Montagna only challenges how the ALJ then articulated the following paragraph:

> Therefore, the undersigned will weigh the evidence above in the claimant's favor and reduce his residual functional capacity accordingly, particularly since any pain or other symptoms he may have been experiencing have likely been further exacerbated by the fact that his body mass index has persistently been in excess of 30.0 kg/m$^2$.

(R. 16-17.) The ALJ proceeded to consider Montagna's physical examination records, reported symptoms, and psychological evaluations before turning to the medical opinion evidence provided by state agency consultants and Montagna's examining physician. (R. 17-19.) Ultimately, in light of all the above evidence, the ALJ determined:

> [Montagna] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: Only occasional balance, stoop, crouch, and climbing ramps and stairs. No kneeling, crawling, or climbing ladders, ropes, or scaffolding. No working at unprotected heights or unguarded moving machinery. No use of foot controls with the right lower extremity. No walking on rough or uneven surfaces. Would need a cane if ambulating more than ten minutes.

-3-

(R. 14.) Pursuant to 20 C.F.R. § 404.1567(a), sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

At step four, the ALJ determined that Montagna was unable to perform any past relevant work as a diesel mechanic and an auto mechanic due to his very limited RFC. (R. 19.) At the fifth and final step, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Montagna] can perform." (R. 20.) This finding was based on the testimony of a vocational expert who, after considering Montagna's RFC and the additional work limitations that the ALJ found, "testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as an election clerk . . . a document scanner . . . and a surveillance system monitor." (Id.) Accordingly, the ALJ found Montagna not disabled and denied his application for benefits. (R. 21.)

The ALJ published his decision on January 9, 2020. (R. 21.) Montagna appealed this decision to the Appeals Council, which denied review on August 14, 2020. (R. 5.) Montagna then filed the present appeal on October 13, 2020, arguing that the ALJ did not

adequately consider the effects that Montagna's obesity had on his symptoms and other impairments. (ECF No. 1.)

## II. ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole

and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   Articulation of the Effects of Obesity**

Montagna argues that the ALJ did not correctly apply the regulations when determining his RFC, and that this necessarily means that the ALJ's RFC determination is not supported by substantial evidence. Montagna specifically claims that the ALJ did not "consider the limiting effects of obesity" and did not "assess the RFC to show the effect obesity has on [Montagna's]

-6-

routine movement and necessary physical work activity" as required by Social Security Ruling 19-2p. (ECF No. 27 at 4.)

Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). They constitute "public precedential decisions" relating to the Administration's interpretations of law and regulations and dictate how certain laws and regulations are applied. Social Security Ruling 19-2p, 2019 WL 2374244, at *1 (May 20, 2019). Both Montagna and the government agree that SSR 19-2p, which articulates how the Administration establishes "that a person has a medically determinable impairment of obesity and how [they] evaluate obesity in disability claims under Titles II and XVI of the Social Security Act," applies.[1] Id. SSR 19-2p requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." Id. at

---

[1] In SSR 19-2p, the Administration stated that they would "apply [SSR 19-2p] to new applications filed on or after the applicable date of the SSR *and* to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in *any* case in which we make a determination or decision." SSR 19-2p, 2019 WL 2374244, at *5 n.14. While Montagna's initial application was filed before May 20, 2019, his claim was still pending as of May 20, 2019, and ultimately was not decided until January 9, 2020. By its terms, SSR 19-2p applies to Montagna's case. See Gray v. Kijakazi, No. 4:20-CV-00575-MDH, 2021 WL 3891585, at *6 (W.D. Mo. Aug. 31, 2021) ("For one thing, SSR 02-1p does not apply to this case because it was rescinded and replaced by SSR 19-2p effective May 20, 2019, more than two months before the date of the ALJ's decision."); Lumpkin v. Comm'r of Soc. Sec., No. 1:20-CV-01849-DAP, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021) ("The applicable date was May 20, 2019 and the regulation clearly directed the ALJ to apply SSR [19-2p] to all decisions involving obesity made after it.")

\*4. The Ruling notes that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." Id. Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the "burden of showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC." Lumpkin, 2021 WL 5828692, at \*7. Montagna argues that the ALJ "does nothing more than make a cursory reference to Plaintiff's obesity and its effects, and [] fails to mention SSR 19-2p," and thus fails to adequately explain how he considered Montagna's obesity. (ECF No. 27 at 4-5.)

While it is true that the ALJ did not explicitly cite SSR 19-2p in his decision, it is clear he followed its commands. The ALJ explicitly decided to "reduce [Montagna's] residual functional capacity accordingly, particularly since any pain or other symptoms he may have been experiencing have likely been further exacerbated" by his obesity. (R. 17.) This is a clear conclusion that Montagna's obesity causes further limitations than the medical evidence suggests on its own. SSR 19-2p merely requires the ALJ to "explain how [h]e reached [his] conclusion on whether obesity causes any limitations." SSR 19-2p, at \*4. Contrary to Montagna's assertion that the ALJ must then "explain with

-8-

specificity which pain or symptoms would be exacerbated by Plaintiff's obesity," SSR 19-2p only requires that obesity be considered and that the conclusion reached regarding its effects be explained. Here, the ALJ concluded that Montagna's obesity caused limitations and explained that he imposed those limitations because obesity exacerbated *all* of Montagna's pain and symptoms. The complications of obesity factored into the ALJ's decision to reduce Montagna's RFC below typical sedentary work by preventing Montagna from "kneeling, crawling, or climbing ladders, ropes or scaffolding" and limiting him to "only occasional balance, stoop, crouch, and climbing ramps and stairs." (R. 14.) Similar cases suggest that as long as an ALJ expressly considers obesity's effects in assessing the claimant's RFC, SSR 19-2p is satisfied. Compare Miley v. Comm'r of Soc. Sec., 1:20-cv-2550, 2021 WL 6064754, at *10 (N.D. Ohio Dec. 22, 2021) ("this court's role is not to ensure that everything that can be said on a topic gets said in an ALJ decision, it is to ensure that what is said is supported by substantial evidence."); with Janet F. v. Saul, No. 4:19cv61, 2020 WL 1443783, at *9 (N.D. Ind. Mar. 23, 2020) (SSR 19-2p violated where the ALJ "did not mention Plaintiff's BMI and referred to her weight only in passing" and Plaintiff pointed to specific symptoms of "CHF, OSA, COPD, and arthritis" that her obesity exacerbated).

Montagna has also not made any argument about how his obesity, in combination with other symptoms, limited his ability more than the ALJ's RFC determination. The ALJ here already "weigh[ed] the evidence" of Montagna's subjective pain and symptoms "in the claimant's favor and reduce[d] his residual functional capacity accordingly" due to his obesity. Montagna's burden requires him to point to specific symptoms that his obesity exacerbated even further than the ALJ found. He has not done so. Because Montagna has failed to meet this burden, and because the ALJ explicitly considered how Montagna's obesity impacted his other impairments and accordingly reduced his RFC, the ALJ's determination was supported by substantial evidence.

## II.  CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

February 24, 2021
Date